# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFFREY K. BUCKLEY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. 11-CV-727-TLW |

## OPINION AND ORDER

Plaintiff Jeffrey K. Buckley requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying plaintiff's applications for disability insurance benefits under Titles II and XVI of the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. # 13). Any appeal of this order will be directly to the Tenth Circuit Court of Appeals.

Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the ALJ incorrectly determined that plaintiff was not disabled. For the reasons discussed below, this Court REMANDS the decision of the Commissioner.

## Procedural History

On April 20, 2009, plaintiff filed applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 216(i), 223(d), and 1614(a)(3)(A). Plaintiff alleges disability due to "back problems and other conditions." (R. 158). After being denied benefits, plaintiff requested a hearing before

an ALJ on December 4, 2009. The ALJ conducted a hearing on June 24, 2010. (R. 30-61). On July 28, 2010, the ALJ issued his decision denying benefits. (R. 18-29). On September 27, 2010, plaintiff appealed this decision to the Appeals Counsel. (R. 1-5). Following the decision, the Appeals Council upheld the ALJ's decision and denied plaintiff's request for review on September 21, 2011. (R. 5). The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. On November 22, 2011, plaintiff timely filed the subject action with this Court. (Dkt. # 2).

## Standard of Review and Social Security Law

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied

the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

## **Background**

Plaintiff was born on July 21, 1960, and was 50 years old at the time of the ALJ's decision on July 28, 2010. (R. 34). He graduated high school, where he attended special education classes. (R. 162). Plaintiff's prior work history primarily consists of employment as a catering and banquet helper (SVP 2, medium exertion). (R. 56). Plaintiff alleges a disability onset date of January 1, 2006. (R. 129, 136). Plaintiff is not married and has no minor children.

(R. 36-37). In his complaint, plaintiff alleges that he became disabled from "back problems and other conditions." (R. 158). According to plaintiff's list of medications, he takes no prescription medications, only aspirin, Advil and extra strength Tylenol for his back pain. (R. 40, 192).

**Testimony**

Plaintiff stated he knows how to drive but does not have a license, or a car, and does not drive. (R. 36). He is behind on child support payments, owing approximately $20,000.00. He is not accumulating any further support liability because his daughter turned 18. Plaintiff stated his father helps him pay his back support to keep him out of jail, and that his wages were garnished before he lost his job. (R. 36-37). He smokes cigarettes, but is trying to quit. (R. 38-39). He reported no use of alcohol or illegal drugs. (R. 39). Plaintiff said he takes no prescription medications, only aspirin or Tylenol. (R. 40).

When asked why he could not work, plaintiff stated his "back and the [right] hip" kept him from working. (R. 41). He stated his spinal cord is crooked (R. 41), and pain in the lower back keeps him from getting up and out of the bed and he is unable to "sit down long enough" to work. (R. 42). He said he has to switch sides while sitting to relieve the pain in his right hip, and tries to sit in the middle of both hips. (R. 44). The ALJ noted plaintiff was slumped in his chair during the hearing. Id. Plaintiff said he can sit a total of about 30 minutes, longer if he has a pillow to sit on. (R. 45). He said he can only stand for 45 minutes at a time before needing to sit down. (R. 46). Plaintiff explained that he had been in four car accidents, only received treatment for two, but cannot provide any treatment records. (R. 47-48).

Plaintiff stated he can walk a half mile before needing to rest, and can lift about 40-45 pounds occasionally, but not for two-thirds or even one-third of the day. (R. 48). He felt he could lift 20-25 pounds between one-third and two-thirds of the day. Id.

At the hearing, plaintiff also alleged depression as a reason he cannot work, but admitted he has not received any treatment for it. (R. 49). He said he gets up around noon, eats, and sits around the house. Occasionally, he feeds his dog. (R. 50). He washes dishes sometimes, takes out the trash, and cleans the bathroom, but he does not cook. (R. 50). He walks to a friend's house and plays dominos. (R. 51). He does not attend church. Id. He goes shopping once a month with his sister. (R. 52).

The ALJ questioned plaintiff about a conviction for drug possession in 1989, and about a protective order filed against him. (R. 53-54). Next, the ALJ asked the vocational expert to define plaintiff's past work. She stated his past work was as a catering and banquet helper, which is medium exertion, unskilled work with an SVP of 2. (R. 56). The ALJ then proposed his first hypothetical to the vocational expert:

> a 49 year old individual with a high school education and work experience as you outlined in your testimony today. In this first hypothetical, the person can lift no more than 50 pounds occasionally, 25 pounds frequently with pushing and pulling consistent with the lifting and carrying limitations. This individual could stand and walk for six hours out of an eight hour day and sit for six hours out of an eight hour day. And would be limited to simple tasks.

(R. 56). The VE stated such an individual would be able to perform plaintiff's past relevant work.

The ALJ then presented a second hypothetical to the vocational expert:

> [i]f that individual were limited to just 20 pounds of lifting occasionally, ten pounds frequently with the ability to sit and stand for -- sit and walk -- stand and walk for six hours out of an eight hour day and sit for six hours out of an eight hour day. And could lift and – I'm sorry. Could push and pull consistent with his -- the 20 pounds occasionally, ten pounds frequently lifting requirement. Would he be able to do his past relevant work?

(R. 57). The vocational expert replied plaintiff would not be able to perform his past relevant work, but could perform the light, unskilled jobs of office cleaning and machine press operator. (R. 57).

Plaintiff's attorney then asked the vocational expert if the mental limitations found by the agency physician at exhibit 4F would affect the jobs found with the ALJ's second hypothetical. (R. 59). The vocational expert stated that if accepted, those limitations might make it difficult for plaintiff to maintain employment. (R. 60).

**Medical records**

Plaintiff submitted no medical records from any treating physician. The only medical records in the file consist of two consultative examinations, one physical and one mental. (R. 204-211, 212-218). Patrice Wagner, D.O. performed a physical consultative examination of plaintiff on June 23, 2009. She noted plaintiff's range of motion in all areas was within normal limits, and noted pain in his back with motion. (R. 208-211). Plaintiff reported to Dr. Wagner he could not read, write, or understand, yet when he was asked to read two sentences, he was able to do it with only one mistake. (R. 206). Dr. Wagner noted plaintiff's right knee was tender with fluid present, and was without edema or inflammation. (R. 207). She also noted plaintiff moved around the exam room easily with full range of motion in his spine. Id. Straight leg raise testing was negative bilaterally in both the seated and supine positions. Id. Heel and toe walking was normal bilaterally, and Dr. Wagner noted plaintiff "ambulates with a stable gait at an appropriate speed without use of assistive devices." Id. Her assessment of plaintiff was simply "chronic low back pain." Id.

On August 26, 2009, plaintiff received a mental consultative examination from Dennis A. Rawlings, Ph.D. Dr. Rawlings used the WAIS-III testing (R. 214) to determine plaintiff's

6

intelligence to be in the "Mildly Mentally Retarded Range," with a Verbal Scale IQ of 66, a Performance Scale IQ of 68, and a Full Scale IQ of 64. Dr. Rawlings stated plaintiff was "clearly illiterate." (R. 217). Dr. Rawlings also found plaintiff's adaptive skills to be in the "Borderline to Low Average Range," and he opined that based on plaintiff's test behavior, mental alertness, cooperation, and motivation, the test results were a reliable and valid assessment of his current level of intellectual functioning. Id. Plaintiff's prognosis was rated as "fair to guarded with treatment and sobriety," and Dr. Rawlings recommended referral to "the community mental health system for treatment for depression"; that plaintiff "abstain from alcohol and drugs for life"; and a "referral to Goodwill Industries of Tulsa." (R. 218).

Non-examining physician Dorothy Millican-Wynn, Ph.D. completed a request for plaintiff's earnings on September 4, 2009 to help her determine if plaintiff's vocabulary score of 3 coupled with his "physical health issues" would interfere with his ability to find and keep employment. (R. 219). On September 10, 2009, after receiving the information she requested, Dr. Wynn completed a Mental RFC form regarding plaintiff, ranking him markedly limited in the areas of the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public. She ranked him moderately limited in the ability to maintain attention and concentration for extended periods of time, and the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (R. 220-221). Dr. Wynn's functional capacity assessment was that:

> Claimant can perform simple tasks with routine supervision.
> Claimant can relate to supervisors and peers on a superficial work basis.
> Claimant cannot relate to the general public.
> Claimant can adapt to a work situation.

7

(R. 222). Also on September 10, 2009, Dr. Wynn completed a Psychiatric Review Technique ("PRT") form, stating she was evaluating plaintiff in the areas of 12.04, affective disorders, and 12.05, mental retardation. (R. 224). Dr. Wynn neglected to check any boxes on the 12.04 portion of the form. (R. 227). She noted plaintiff had a "valid verbal, performance, or full scale IQ of 60 through 70" on the form's 12.05D section. Dr. Wynn rated plaintiff's functional limitations as mild in restriction of activities of daily living and difficulties maintaining social functioning, and moderate in the area of difficulty maintaining concentration, persistence, or pace. Dr. Wynn noted insufficient evidence to determine episodes of decompensation. (R. 234). Dr. Wynn did not check anything under the paragraph C criteria. (R. 235). She noted both consultative examination results, and recommended that plaintiff receive a payee if he were awarded benefits. (R. 236). Dr. Wynn's assessment of plaintiff's abilities was affirmed by Cynthia Kampschaefer, Psy.D. on November 10, 2009. (R. 246).

Non-examining physician Thurma Fiegel, M.D. completed a physical RFC form for plaintiff on September 17, 2009, rating him with the ability to occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about six (6) hours of an eight (8) hour workday, and sit for about six (6) hours of an eight (8) hour workday. (R. 239). No further limitations were imposed. (R. 240-245). Dr. Fiegel's assessment was affirmed on November 13, 2009 by J. Marks-Snelling, D.O. (R. 247).

## Decision of the Administrative Law Judge

Plaintiff alleges his disabling impairments include "back problems and other conditions." (R. 158). In assessing plaintiff's qualifications for disability, the ALJ determined plaintiff was insured for Title II benefits through March 31, 2009. At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since

his alleged onset date of January 1, 2006. The ALJ found the severe impairment of "mental retardation" at step two. (R. 23). At step three, the ALJ stated that none of plaintiff's impairments met or equaled any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24). He performed the "special technique" at step three to decide that plaintiff's mental impairments did not meet or equal listing 12.05 (mental retardation). (R. 24-25). Before moving to step four, the ALJ found plaintiff had the residual functional capacity ("RFC") to:

> … perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is able to perform simple tasks.

(R. 25). At step four, the ALJ relied on testimony from the vocational expert to determine that plaintiff could return to his past relevant work as a catering and banquet helper. The ALJ then determined plaintiff had not been under a disability from January 1, 2006 through the date of his decision. (R. 28).

## Issues

Plaintiff's allegations of error are as follows:

1. The ALJ erred in finding plaintiff did not have a severe physical impairment;
2. Medical evidence supports a finding that plaintiff satisfies Listing 12.05C;
3. The ALJ improperly relied on testimony from the vocational expert because the ALJ failed to include additional mental limitations in the hypothetical question; and
4. The ALJ failed to properly conduct a step four inquiry.

(Dkt. # 17 at 3).

## Discussion

### Severe physical impairment

Plaintiff argues that the ALJ erred at step two of the five step sequential process by finding plaintiff's back pain to be a "medically non-determinable" impairment because it is not

9

established in the record. Plaintiff claims that a diagnosis of "chronic back pain" by consultative examiner Dr. Wagner "...would constitute a severe physical impairment as defined by the Commissioner" (dkt. # 17 at 5), yet he does not support this claim with case law from the 10th Circuit or by citing any regulations of the Commissioner.

The Court disagrees with plaintiff's argument. The ALJ noted plaintiff's complaints of back pain are unsupported by "treatment records, radiology reports, physical therapy records or medication logs." (R. 23). The ALJ also commented that plaintiff stated "he takes no prescription pain medication and cannot afford medical care. (Exhibit 6E)," and observed that if plaintiff were in the constant and disabling pain he claims, he would exhaust every avenue of relief available to him. (R. 27). Further, the ALJ noted plaintiff's consultative examination results from Dr. Wagner were within normal limits "with the exception of pain upon full range of motion of the lumbosacral spine and right knee tenderness upon palpation. The [plaintiff] ambulated with a stable gait at an appropriate speed." (R. 26).

At steps one through four of the five step sequential evaluation process, the burden of proof lies with the plaintiff. See 20 C.F.R. §§ 404.1512(a), 416.912(a); Grogan, 399 F.3d at 1261 (citing Williams, 844 F.2d at 751 and n.2). Therefore, at step two, plaintiff still maintains the burden of proving his case.

The step two severity determination is based on medical factors alone, and "does not include consideration of such vocational factors as age, education, and work experience." Williams, 844 F.2d at 750. This showing is characterized by the 10th Circuit as "*de minimis*," but the mere presence of a condition is not sufficient to make a step-two showing. See Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir.1997); and see SSR 85-28, 1985 WL 56856 at *3 (providing that a step-two finding of "non-severe" impairment is only to be made where

"medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered"). In determining whether a severe impairment exists, the Commissioner considers the "effect" of the impairment. 20 C.F.R. §§ 404.1520(a), 416.920(a); Williamson v. Barnhart, 350 F.3d 1097, 1099 -1100 (10th Cir. 2003). Consequently, when Congress categorized the severity requirement in the regulations, it noted that a claimed "physical or mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the *cause of failure to obtain any substantial gainful work*." S.Rep. No.1987, 83d Cong., 2d Sess., reprinted in 1954 U.S. Code Cong. & Ad. News 3710, 3730 (emphasis added). Williamson, 350 F.3d at 1100 (10th Cir. 2003). Plaintiff's allegations of disabling back pain are not borne out by the evidence of record. The ALJ noted that the record is devoid of any actual treatment records, and that plaintiff testified he only takes over-the-counter medications for his pain. (R. 27). This portion of the ALJ's decision is affirmed.

**Listing 12.05C**

Plaintiff next argues that he meets the requirements of Listing 12.05C because of his physical impairment of chronic back pain. (Dkt. # 17 at 6). As discussed *supra*, the Court affirmed the ALJ's decision regarding the lack of any physical impairment related to plaintiff's back; therefore, plaintiff's listing argument is moot.

**Hypothetical Question and Step Four Analysis**

Plaintiff contends the ALJ presented a faulty hypothetical to the vocational expert at the hearing by not including any limitation related to the general public. Plaintiff further contends

that this error created an inaccuracy in the ALJ's step four finding that plaintiff could return to his previous work as a catering and banquet helper. (Dkt. # 17 at 7-8). This argument has merit.

The ALJ stated in his decision that he gave "great weight" to the opinions of the non-examining agency physicians in the record. (R. 27). However, the ALJ failed to include the limitation that plaintiff was unable to relate to the general public as opined by agency physician Dorothy Millican-Wynn, Ph.D. This limitation was left out of both hypothetical questions to the vocational expert and out of the ALJ's decisional RFC.

Plaintiff's attorney asked the vocational expert if a person with the limitations found in exhibit 4F (Dr. Wynn's mental RFC form) would be able to sustain work. The vocational expert stated a person with those limitations would "have difficulty" keeping a job. (R. 60). The ALJ did not discuss his reasoning for failing to include all of Dr. Wynn's limitations in his RFC. A record must "demonstrate that the ALJ considered all of the evidence," through "discussing the evidence supporting his decision, ... the uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir.1996). Unless an ALJ explicitly weighs all of the significantly probative evidence in a case, the Court cannot assess whether his decision was supported by substantial evidence as required. Id. at 1009. This error must be remanded to the ALJ for clarification.

## Conclusion

The decision of the Commissioner finding plaintiff not disabled is AFFIRMED in part and REVERSED in part as set forth herein. Thus, the decision is REMANDED for further consideration consistent with this Opinion and Order.

SO ORDERED this 18th day of December, 2012.

T. Lane Wilson
United States Magistrate Judge